JONES, Justice:
In the Circuit Court of Washington County, Mississippi, appellee obtained a judgment for $35,000 for damages resulting from an automobile accident; from this judgment the appellant appeals.
We affirm.
The assignments of error are:
(1) The giving of a peremptory instruction for appellee;
(2) The refusal of five instructions for appellant; and
(3) The excessiveness of the verdict.
In Leland, Mississippi, the public elementary school sits on the south side of Third Street, which runs in an easterly and westerly direction. In front of the school, a crosswalk — at which a policewoman is stationed to protect the crossing children during the opening hours of school — extends from the south side and runs in a northerly direction across Third Street. A semi-circular roadway going to and from the school enters the school grounds to the west of the crosswalk where the policewoman is stationed, then circles, and exits on the east side of the crosswalk.
Around eight o’clock on the morning of December 12, 1967, Mrs. Dendy was re *815 turning home, having taken her husband to work and her daughter to school. She was traveling east on Third Street. As Mrs. Dendy approached the crosswalk at a very slow speed (the speed limit was fifteen miles per hour), she received a signal to stop from the policewoman; and she did. Mrs. Dendy testified that before stopping, she had seen the appellant through her rearview mirror and had estimated appellant to be approximately thirty feet to the rear; however, the evidence fails to disclose any signal or other effort on her part to warn the car behind and fails to disclose that Mrs. Dendy’s car was equipped with stoplights.
Mrs. Dean, who was behind Mrs. Dendy, was carrying her child to the elementary school. Appellant testified that as she approached the crosswalk, she was traveling at a speed of approximately five miles per hour or less; that prior to hitting Mrs. Dendy, who had stopped at the crosswalk, she (Mrs. Dean) had stopped behind a line of cars; and that she (Mrs. Dean) stopped and moved forward as the line of cars did; however, appellee, Mrs. Dendy, did not remember the latter two stated facts.
On the sidewalk on the south side of Third Street and on the same side that the school is located, children were going east and were approaching the driveway that enters the school grounds, these children being directly southwest of Mrs. Dean. Evidently there were children crossing the street on the crosswalk, for Mrs. Dendy said the signal of the policewoman stopped her.
While Mrs. Dean said that she was acquainted with the crossing and knew that a policewoman was supposed to be there, she did not, in fact, see her on this particular occasion. As Mrs. Dean approached the rear of Mrs. Dendy’s car, there were children on her right and in front of her. The children on her right appeared about to enter the driveway going into the school grounds.
Mrs. Dean testified that as she (Mrs Dean) was attempting to turn right into the school driveway, Mrs. Dendy stopped her car very suddenly; and that her left front fender came in contact with the right rear fender of Mrs. Dendy’s car. Mrs. Dendy testified that from this contact, the injuries hereinafter related occurred. After the collision, Mrs. Dendy walked to Mrs. Dean’s car; some little conversation ensued; and Mrs. Dendy returned to her car and departed.
It is from these facts that the court gave to Mrs. Dendy a peremptory instruction and to Mrs. Dean a comparative negligence instruction. The first assignment deals with the peremptory instruction granted Mrs. Dendy. We think it is clear that Mrs. Dean was guilty of some negligence; such as, not stopping, not keeping a lookout, traveling too fast, not having the car under control, which negligence, at least, contributed to the accident and to Mrs. Dendy’s injuries; and we cannot say that the court was in error in giving the peremptory instruction.
We also think the comparative negligence instruction was justified by the evidence. Although Mrs. Dendy knew the other car was approaching, she stopped without giving any signals to the approaching car; and, as stated, there is no evidence her car’s “stop” or “back-up” lights were operating.
A motorist intending to stop must use due care for the safety of others following so closely behind that they might be imperiled by a sudden stop. 60A C.J.S. Motor Vehicles § 301, p. 242 (1969). It has been held that the requirement that a motorist obey a police officer’s signal, does not include authority to make an .improper stop without a signal or warning and does not relieve the motorist of liability to an injured driver of a following vehicle. 60A C.J.S. Motor Vehicles § 301, p. 244 (1969).
*816 The appellant assigns a number of instructions which were refused her, and alleges that the refusal of the instructions constituted error. Except for the peremptory instruction, the ones that were refused are such instructions that would have been proper; but with the appellee’s peremptory instruction given, it was not error for the court to refuse these instructions.
The judgment of the lower court for $35,000 is said to be excessive.
Mrs. Dendy, who was forty-four years of age, had been married for twenty-six years, had borne five children, and for most of her married life had worked as a housewife. Before her marriage, Mrs. Dendy had worked as a secretary in a school principal’s office during her senior year in high school and then the summer following. After marriage, she had worked in a department store part-time during the latter part of 1966 and the early months of 1967; and during March, April, and part of May, 1967, Mrs. Dendy had worked as a secretary for a finance company for $50 per week.
The accident occurred December 12, 1967; and Mrs. Dendy’s neck was examined and x-rays were made that same day. Dr. Simmons, the first doctor called, contacted Dr. Hamilton; whereupon, on December 13, she was transferred to the King’s Daughters Hospital, where she was examined by Dr. Hamilton and where more x-rays were made. She was given muscle relaxants and pain relievers, was placed in traction, and was fitted with a brace and collar. For seven months, beginning December 24, 1967, and going through July, 1968, the brace was worn all day every day that she was out of bed. She was required to sleep in a collar from December 24, 1967, through July, 1968. After about eleven or twelve days, she was discharged from her first visit to the hospital.
She continued to have pain and disabling injuries from December 12, 1967, until September 29, 1969, when a second accident occurred. Dr. Simmons examined and treated before the second accident.
Dr. Simmons testified he found tenderness over the cervical spine, posterior neck, with muscle spasms and tenderness in the lumbar region. X-rays, he said, revealed a fracture of the fifth and sixth cervical vertebrae.
Dr. Hamilton said that on his examination he found changes consistent with the diagnosis of fracture and partial dislocation, together with a fracture of the inferior articulating facet of C5. Dr. Hamilton further stated that he found a small chipped fracture of the front lower part of the fifth neck bone, and pain in the left leg and arm caused by irritation of the C4 nerve root.
In May, 1969, Dr. Hamilton felt that she would need eighteen more months to recover. He testified that there was permanent partial disability of not less than ten percent nor more than fifteen percent; that there was a ninety percent chance that corrective surgery would be required; and that Mrs. Dendy would continue to have some pain after the operation. The evidence showed that this corrective surgery would entail expense of about $2,000. The expense of this first accident was $1,577.75. Other doctors testified. Some of their testimony was contradictory in some particulars and corroborative in others. Mr. Dendy testified about the daily pain and suffering of his wife from the date of injury to September 29, 1969. Dr. Hamilton and Mr. Dendy testified about a personality change in plaintiff.
As stated, the jury was instructed on the question of comparative negligence; and doctors having testified as to the results of both accidents, the jury was further clearly and positively instructed not to allow any damages in this case for any injuries, if any, received in the second accident. We cannot say that the jury disobeyed any of these instructions; nor can we say that the judge was in error in overruling the motion for *817 a new trial containing an allegation of ex-cessiveness of the verdict.
The case is affirmed.
Affirmed.
GILLESPIE, P. J., and BRADY, IN-ZER and ROBERTSON, JJ., concur.